THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| MICHAEL A. BACON,<br><br>                    Plaintiff,<br><br>v.<br><br>CACHE COUNTY JAIL et al.,<br><br>                    Defendants. | **MEMORANDUM DECISION<br>AND DISMISSAL ORDER**<br><br>Case No. 2:21-CV-648 TS<br><br>District Judge Ted Stewart |

Plaintiff Michael A. Bacon, as a federal pretrial detainee who had been held in Cache County Jail (CCJ) in Utah,[1] filed this *pro se* civil-rights action, *see* 42 U.S.C.S. § 1983 (2025),[2] proceeding *in forma pauperis*, *see* 28 *id.* § 1915. (ECF Nos. 6-7.)

After screening Plaintiff's Original Complaint (OC), the Court ordered him to cure its numerous deficiencies. (ECF Nos. 7, 46.) In that Cure Order, the Court gave specific guidance on the deficiencies, along with other details to help Plaintiff file an amended complaint with valid claims. (ECF No. 46.) The Cure Order further stated, "The Amended Complaint MAY NOT include claims outside or beyond what was already contained in the complaint originally

---

[1] Plaintiff explains, "I was not sentenced. I was being held for federal criminal charges in the county jail[. B]ecause the U.S. Marshal Service has no holding facility[,] they contract out to the county jails to house federal inmates like me." (ECF No. 49, at 4.)

[2] The federal statute creating a "civil action for deprivation of rights" reads, in pertinent part:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C.S. § 1983 (2025).

filed here."[3] (*Id.* at 13.) The Court also advised, "If an amended complaint is filed, the Court will screen it for dismissal or an order effecting service upon valid defendants." (*Id.*)

Plaintiff has now filed the Amended Complaint (AC), with only unnamed defendants[4] employed at the United States Marshals Service (USMS) and Cache County Sheriff's Office, and alleging similar claims as the OC: inadequate medical protocol; loss of personal property, including payments for unwanted medications; and price gouging regarding the phone system and commissary.[5] (ECF Nos. 7, 49-50.) He asserts his injuries are "los[s] of personal items and money" and "mental/emotional anguish." (ECF No. 49, at 7.) He requests relief of money, including punitive damages. (*Id.* at 8.)

---

[3] The relevant dates carrying from the OC to the AC show that, "on September 21, 2021," Plaintiff was "transported from Salt Lake County Jail by U.S. Marshals Service [and] taken to federal courthouse," then was "picked up by Cache County deputies to be transported to Cache County Jail." (ECF Nos. 7, at 4; 49, at 6.) Then Plaintiff was apparently "returned to U.S. Marshal custody Oct. 14, 2021." (ECF No. 7, at 7.)

[4] The Tenth Circuit has said the following about unnamed defendants:

> Courts have generally recognized the ability of a plaintiff to use unnamed defendants so long as the plaintiff provides an adequate description of some kind which is sufficient to identify the person involved so process eventually can be served. *See Billman v. Ind. Dep't of Corr.*, 56 F.3d 785, 789 (7th Cir. 1995); *Dean v. Barber*, 951 F.2d 1210, 1216 (11th Cir. 1992); *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985); *Maggette v. Dalsheim*, 709 F.2d 800, 803 (2d Cir. 1983); *Schiff v. Kennedy*, 691 F.2d 196, 197-98 (4th Cir. 1982); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *see also Colle v. Brazos Cnty.*, 981 F.2d 237, 243 (5th Cir. 1993) (noting *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980), with approval, but affirming dismissal of suit against unnamed defendants for failure to prosecute where defendants remained unnamed for three years).

*Roper v. Grayson*, 81 F.3d 124, 126 (10th Cir. 1996); see also *Hill v. Corr. Corp. of Am.*, 14 F. Supp. 2d 1235, 1238 (D. Kan. 1998) ("The John Doe defendants described only as CCA employees have not been named or identified in the pleadings in any manner whatsoever. As a consequence, personal service could never be effectuated, and no relief can be awarded against them. Plaintiff alleges in conclusory fashion that he was assaulted and discriminated against by 'defendants' but never describes events or alleges dates, locations, specific acts or other details. Nor does he ascribe any particular acts to a certain defendant.").

It is noted initially that Plaintiff appears to have made little (if any) effort to ascertain the identities of, or describe facts sufficient to identify, the unnamed defendants. On this basis alone, the defendants could be dismissed.

[5] Plaintiff later filed "Addendum/Addition to Amended Complaint," in which he adds as a defendant Securus, "the phone provider for Cache County Jail." (ECF No. 50, at 1.)

Having now thoroughly screened and liberally construed[6] the AC, (ECF Nos. 49-50), under its statutory review function,[7] the Court dismisses this action.

# I. ANALYSIS FOR FAILURE TO STATE A CLAIM

## A. STANDARD OF REVIEW FOR *SUA SPONTE* DISMISSALS

Assessing a complaint for failure to state a claim upon which relief may be granted, this Court takes all well-pleaded factual assertions as true and regards them in a light most advantageous to Plaintiff. *Ridge at Red Hawk L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). Dismissal is appropriate when--though viewing the facts in Plaintiff's favor--a "plausible" right to relief has not been posed. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)*; Robbins v. Oklahoma*, 519 F.3d 1242, 1247-48 (10th Cir. 2008). "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' . . . entitle[ment] to relief." *Robbins*, 519 F.3d at 1247 (quoting *Twombly*, 550 U.S. at 556). When a civil-rights complaint contains "bare assertions," with "nothing more than a 'formulaic recitation of the elements' of a constitutional . . . claim," the Court considers those assertions "conclusory

---

[6] The Court recognizes Plaintiff's *pro se* status, and so construes his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). Still, such liberal reading is meant merely to overlook technical formatting errors and other similar defects in Plaintiff's use of legal terminology and proper English. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). *Pro se* status does not excuse Plaintiff from the duty to meet various rules and procedures directing litigants and counsel or the mandates of substantive law; regarding these, the Court will treat Plaintiff with the same standards applicable to counsel licensed to practice law before this Court's bar. *See McNeil v. United States*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan Cnty.*, 32 F.3d 452, 455 (10th Cir. 1994).

[7] The screening statute reads:
> (a) Screening.--The court shall review . . . a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) Grounds for dismissal.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
>> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C.S. § 1915A (2025).

and not entitled to" an assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009) (quoting *Twombly*, 550 U.S. at 554-55). In other words, "the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims." *Red Hawk*, 493 F.3d at 1177 (italics in original). "[T]he complaint must contain something more than 'unadorned, the-defendant-unlawfully-harmed-me accusation[s].'" *Eaves v. Kory*, No. 24-1048, 2024 U.S. App. LEXIS 12964, at *2-3 (10th Cir. May 30, 2024) (unpublished) (quoting *Iqbal*, 556 U.S. at 678). Also, "[f]acts, not conclusions, must be pleaded--'the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions,' including where a 'legal conclusion [is] couched as a factual allegation.'" *Renaud v. Ross*, No. 1:22-CV-212, 2023 U.S. Dist. LEXIS 19808, at *8 (D. Wy. Jan. 27, 2023) (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

As the Court reviews the sufficiency of Plaintiff's allegations, it painstakingly does so per individual defendant, per cause of action. *See Williams v. Utah Dep't of Corr.*, 928 F. 3d 1209, 1212 (10th Cir. 2019) (stating plaintiff must "explain[] which . . . prison-official defendants are liable for what improper conduct"). Indeed, § 1983 cases often include a list of defendants, like

> the government agency and a number of government actors sued in
> their individual capacities. . . . [I]t is particularly important in such
> circumstances that the complaint make clear exactly *who* is alleged
> to have done *what* to *whom*, to provide each individual with fair
> notice as to the basis of the claims against him or her, as
> distinguished from collective allegations against the state.

*Robbins*, 519 F.3d at 1249-50 (emphasis in original) (citing *Twombly*, 550 U.S. at 565 n.10). When a complaint "fails to isolate the allegedly unconstitutional acts of each defendant," the plaintiff has not carried the burden of providing "adequate notice as to the nature of the claims against each." *Id.* at 1250. For instance, when a complaint uses "the collective term 'Defendants'

or a list of the defendants named individually but with no distinction as to what acts are

attributable to whom, it is impossible for any of these individuals to ascertain what particular

unconstitutional acts they are alleged to have committed." *Id.*[8]

---

[8] Because the original complaint had "not adequately affirmatively linked defendants to civil-rights violations," the Cure Order contained a section marked, "Affirmative Link - Personal Participation," under which Plaintiff was alerted that each defendant must be linked to "the specific behavior that constitutes a cause of action." (ECF No. 46, at 3, 7, 11.) This quote from a case was provided to Plaintiff so that he would understand his burden:

> [A] plaintiff who brings a constitutional claim under § 1983 can't obtain relief without first satisfying the personal-participation requirement. That is, the plaintiff must demonstrate the defendant "personally participated in the alleged constitutional violation" at issue. *Vasquez v. Davis*, 882 F.3d 1270, 1275 (10th Cir. 2018). Indeed, because § 1983 is a "vehicle[] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants." *Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013); *see also Robbins*, 519 F.3d at 1250 (explaining when plaintiff brings § 1983 claims against multiple defendants, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom"); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532-33 (10th Cir. 1998)) (holding district court's analysis of plaintiff's § 1983 claims was "infirm" when district court "lump[ed]" together plaintiff's claims against multiple defendants-- "despite the fact that each of the defendants had different powers and duties and took different actions with respect to [plaintiff]"— and "wholly failed to identify specific actions taken by particular defendants that could form the basis of [a constitutional] claim").

(ECF No. 46, at 11) (quoting *Est. of Roemer v. Johnson*, 764 F. App'x 784, 790-91 (10th Cir. 2019)). Plaintiff was further warned,

> "A plaintiff's failure to satisfy this requirement [of pleading personal participation by each defendant] will trigger swift and certain dismissal." *Id.* at 790 n.5. The Tenth Circuit has "gone so far as to suggest that failure to satisfy the personal-participation requirement will not only justify dismissal for failure to state a claim; it will render the plaintiff's claim frivolous." *Id.*

(ECF No. 46, at 12) (quoting *Roemer*, 764 F. App'x at 790 n.5). Other directions in the Cure Order stated,

> (2) The complaint must . . . clearly state in the body of the complaint what each defendant--typically, a named government employee--did to violate Plaintiff's civil rights. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976) (stating personal participation of each named defendant is essential allegation in civil-rights action). "To state a claim, a complaint must 'make clear exactly *who* is alleged to have done *what to whom*.'" *Stone v. Albert*, 338 F. App'x 757, 759 (10th Cir. 2009) (unpublished) (emphasis in original) (quoting *Robbins*, 519 F.3d at 1250). Plaintiff should also include, as closely as possible, specific locations, circumstances, and dates of alleged constitutional violations. *McKnight v. Douglas Cnty. Corr. Facility*, No. 21-3030, 2021 U.S. Dist. LEXIS 118659, at *7 n.1 (D. Kan. June 25, 2021).

> (3) Each cause of action, with the facts and citations that directly support it, should be stated separately. Plaintiff should be as brief as possible while still using enough words to fully explain the 'who,' 'what,' 'where,' 'when,' and 'why' of each claim. *Robbins*, 519 F.3d at 1248 ("The *Twombly* Court was particularly critical of complaints that 'mentioned no specific, time, place, or person involved in the alleged [claim].' [550 U.S. at 565]. Presented with such a

## B. EXPOSURE TO COVID-19[9]

Plaintiff asserts that he was exposed to a "highly contagious" and "deadly pandemic,"

when unnamed "[d]efendants did not provide masks or testing nor sanitize[; t]hey d[id] not

follow the policy in place by the CDC and exposed [Plaintiff] on numerous occasions." (ECF

No. 49, at 5-6.) For instance, around September 21 to October 14, 2021, during transport,

recreational activities, laundry service, and in his cell, Plaintiff was purportedly exposed to at

least one other inmate who had tested positive for COVID-19. (*Id.* at 5-7, 10-19.) Still, Plaintiff

does not allege that he ever had COVID. (ECF No. 49.)

---

complaint, 'a defendant seeking to respond to plaintiff's conclusory allegations . .
. would have little idea where to begin.' *Id.*").
(ECF No. 46, at 5-6.)

[9] The following is some general information on COVID-19:

COVID-19 is a primarily respiratory disease, caused by a highly infectious and
easily transmissible coronavirus, that can result in severe complications,
including death. Fatality rates increase for older persons, persons with
compromised immune systems, and persons with underlying health conditions
such as cardiovascular disease, respiratory disease, and diabetes. At the onset of
the COVID-19 pandemic in early 2020, there was no vaccine. Consequently, the
Centers for Disease Control and Prevention (CDC) recommended "preventative
measures to decrease transmission such as physical distancing, mask wearing,
and increasing focus on personal hygiene such as additional hand
washing." *Wilson v. Williams*, 961 F.3d 829, 833 (6th Cir. 2020). Additionally,
the CDC issued a set of recommendations specifically for correctional
institutions, including maintaining an adequate supply of hygiene products,
making alcohol-based hand sanitizer available throughout the facility, providing
soap to prisoners at no cost, periodically disinfecting frequently touched
surfaces, screening and conducting temperature checks of new entrants into the
facility, increasing the spacing of prisoners to at least six feet, staggering meals,
and having healthcare staff conduct regular rounds. *See Swain v. Junior*, 961
F.3d 1276, 1280-81 (11th Cir. 2020). However, implementing measures to
prevent the spread of COVID-19-19 in densely populated prisons while
maintaining order and security proved to be difficult for prison officials. *See id.*
*Robinson v. Washington*, No. 22-1368, 2023 U.S. App. LEXIS 11384, at *2-3 (6th Cir. May 5, 2023) (unpublished).

## 1. Applicable Legal Standards[10]

### a. Deliberate indifference to inmate health and safety

The Tenth Circuit holds that a pretrial detainee's claims as to conditions of confinement are controlled by the Fourteenth Amendment's Due Process Clause, and that "the Eighth Amendment standard provides the benchmark for such claims." *Routt v. Howard*, 764 F. App'x 762, 770 (10th Cir. 2019) (unpublished) (quoting *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)); *see Hooks v. Atoki*, 983 F.3d 1193, 1203-04 (10th Cir. 2020).

The Eighth Amendment demands that carceral officials must provide humane conditions of confinement informed by "contemporary standards of decency." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). "Under the Eighth Amendment, (prison) officials must provide humane

---

[10] Plaintiff was advised of the following standards in the Cure Order:

> The ban on cruel and unusual punishment requires prison officials to "provide humane conditions of confinement" including "adequate . . . medical care." *Craig v. Eberly*, 164 F.3d 490, 495 (10th Cir. 1998)) (quoting *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998)). To state a cognizable claim for failure to provide proper medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Olson v. Stotts*, 9 F.3d 1475, 1477 (10th Cir. 1993) (emphasis in original) (quoting *Estelle*, 429 U.S. at 106). Any claim must be evaluated under objective and subjective prongs: (1) "Was the deprivation sufficiently serious?" And, if so, (2) "Did the officials act with a sufficiently culpable state of mind?" *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). Under the objective prong, a medical need is "sufficiently serious . . .if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Sealock*, 218 F.3d at 1209 (citations & quotation marks omitted). Meanwhile, the subjective component requires the plaintiff to show that prison officials were consciously aware that the prisoner faced a substantial risk of harm and wantonly disregarded the risk "by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). "[T]he 'inadvertent failure to provide adequate medical care' tantamount to negligence does not satisfy the deliberate indifference standard." *Sparks v. Singh*, 690 F. App'x 598, 604 (10th Cir. 2017) (unpublished) (quoting *Estelle*, 429 U.S. at 105–06). Furthermore, "a prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 10th Cir. 1999); *see also Gee v. Pacheco*, 627 F.3d 1178, 1192 (10th Cir. 2010) ("Disagreement with a doctor's particular method of treatment, without more, does not rise to the level of an Eighth Amendment violation.").

(ECF No. 46, at 7-8.)

conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001) (citation omitted).

A carceral official breaches the Eighth Amendment when two elements are met. *Farmer*, 511 U.S. at 834. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* To satisfy the objective component, a prisoner must allege facts showing he or she is "incarcerated under conditions posing a substantial risk of serious harm." *Id.*; *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005).

The second element of an Eighth Amendment violation "follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'" *Farmer*, 511 U.S. at 834. Carceral officials must have a "sufficiently culpable state of mind," which is "deliberate indifference" to inmate health or safety. *Id.* "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Id.* It is not enough to establish that the official should have known of the risk of harm. *Id.*

The sufficiency of a conditions-of-confinement claim depends upon "the particular facts of each situation[, so] the 'circumstances, nature, and duration of the challenged conditions must be carefully considered.'" *Despain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2011) (citation omitted). "While no single factor controls . . . the length of exposure to the conditions is often of prime importance." *Id.* As the severity of the condition increases, the length of exposure required to make out a constitutional violation decreases. *Id.* In other words, "minor deprivations suffered

for short periods would not rise to an Eighth Amendment violation, while substantial

deprivations . . . may meet the standard despite a shorter duration." *Id.* (cleaned up).

### b. Punitive damages

In the Cure Order, the Court advised Plaintiff that one way his Complaint was deficient

was that it

> allege[d] possible constitutional violations resulting in injuries that
> appear to be prohibited by 42 U.S.C.S. § 1997e(e) (2022), which
> reads, "No Federal civil action may be brought by a prisoner . . .
> for mental or emotional injury suffered while in custody without a
> prior showing of a physical injury or the commission of a sexual
> act."

(ECF No. 46, at 3.)

Still, Plaintiff's AC, (ECF No. 49), alleges no physical injury at all--whether *de minimis*

or more serious. *See Johnson v. Reyna*, 57 F.4th 769, 776-77 (10th Cir. 2023). This means he

may not pursue compensatory damages. *See Leek v. Androski*, No. 21-3165, 2022 U.S. App.

LEXIS 10431, at *14-15 (10th Cir. Apr. 18, 2022) (unpublished). However, § 1997e(e) "does not

restrict recovery of punitive damages when a prisoner establishes a constitutional violation." *Id.*

(citing *Searles v. Van Bebber*, 251 F.3d 869, 881 (10th Cir. 2001) (observing physical-injury

requirement does not preclude punitive damages)). And Plaintiff's request for relief includes

punitive damages. (ECF No. 49, at 8.)

> To obtain punitive damages under 42 U.S.C. § 1983, plaintiff must
> show that defendant's conduct was "'motivated by evil motive or
> intent, or . . . involved reckless or callous indifference to the
> federally protected rights of others.'" [*Searles*,] 251 F.3d at 879
> (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)).

*Sanders v. Yeager*, 57 F. App'x 381, 383 (10th Cir. 2003) (unpublished); *see also Carey v.*

*Piphus*, 435 U.S. 247, 266 (1978) (stating punitive damages should be awarded only "to deter or

punish malicious deprivations of rights").

## 2. Facts Presumed True for this Order Only

The following factual allegations by Plaintiff are taken as true and seen in a light most advantageous to Plaintiff for this Order's purposes only, analyzing whether Plaintiff has stated claims upon which relief may be granted:

**a. "[U]nknown named federal agents," employed by "U.S. Marshal,"**[11] "transported [Plaintiff] from Salt Lake County Jail to downtown federal courthouse . . . [o]n September 21, 2021" with about nine total "federal inmates." (ECF No. 49, at 2, 6.) "[Plaintiff] was not tested prior to being transported [and] nor was any of the 8 others, even though one of them had COVID symptoms and they knew this he had COVID symptoms[. P]er policy [and] CDC standards before being transported we are supposed to be tested." (*Id.* at 10.)

**b. "[U]nknown named deputy sheriff[s] Cache County** . . . are the ones who transported [Plaintiff] from federal courthouse to Cache County Jail and who works at the jail as well," along with **"unknown named nurses . . . at Cache County Jail,"** [t]here are many of them and they had direct contact with [Plaintiff]." (*Id.* at 2-3, 5.)

These defendants picked up eleven inmates, including Plaintiff, "and transported [them] to Cache County Jail . . . to be held there for U.S. Marshal." (*Id.* at 10.) Defendants knew the

---

[11] Plaintiff notes, "I don't know what capacity to sue U.S. Marshal federal agents under. Is it *Bivens* or § 1983[?]" (ECF No. 49, at 4.) Meanwhile, in the Cure Order, the Court notified Plaintiff as follows:

> Plaintiff also asserts *Bivens* claims against federal defendants. See *Watson v. Hollingsworth*, 741 F. App'x 545, 551 (10th Cir. 2018) (unpublished) ("When public officials inflict constitutional injuries in the course of performing their duties, they may be individually liable for damages. *Pahls*, 718 F.3d at 1225. A *Bivens* action provides a "private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Iqbal*, 556 U.S. at 675 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)).").

(ECF No. 46, at 1 n.1.)

In other words, "[t]hough more limited in some respects . . ., a *Bivens* action is the federal analog to suits brought against state officials under . . . 42 U.S.C. § 1983." *Hartman v. Moore*, 547 U.S. 250, 254 n.2 (2006); *see also* Waxman & Morrison, *What Kind of Immunity? Federal Officers, State Criminal Law, and the Supremacy Clause*, 112 Yale L.J. 2195, 2208 (2003) ("Section 1983 applies . . . to state and local officers, [and] the Supreme Court in *Bivens* . . . inferred a parallel damages action against federal officers").

inmate with COVID symptoms "had COVID before they transported him with [Plaintiff]." (*Id.* at 10-11.)

Upon their return to CCJ, the eleven inmates were offered testing; out of the eleven, "1 refused 1 tested positive." (*Id.* at 10.) Knowing that of the eleven, one tested positive for COVID and one refused testing, Defendants "had [the inmates] rec together for 2 days . . . also ate together shared the same showers etc, but they never gave [the inmates] protection gear such as masks gloves etc nor did they sanitize the section tables phones showers or cells." (*Id.* at 11.) Even so, Plaintiff "was COVID free." (*Id.*) The inmates were not quarantined, though "jail policy" and "CDC policy" required it. (*Id.* at 11-12.)

Around September 26, 2021, an inmate with COVID symptoms in Plaintiff's cell tested positive for COVID. (*Id.* at 13.) The nurse in the section told Plaintiff that CCJ employees were required by "policy & CDC protocol" to sanitize each cell when inmates were "let out to shower" and "wear gloves or masks," "but they don't" because "staff at the jail don't care." (*Id.* at 13, 15.) After Plaintiff's cellmate tested positive and another inmate in a different cell (cell three) tested positive, the two that tested positive were placed together in one cell, while the other cell-three inmate (after telling CCJ employees that he had COVID symptoms) was moved in with Plaintiff without being tested. (*Id.* at 13-14.) The deputy sheriff and nurse "didn't care." (*Id.*)

On September 27, 2021, Deputy Haden (not a named defendant) took Plaintiff's clothing to be washed with clothing of other people with COVID then threw the cleaned clothing on the floor of Plaintiff's section while, based on signage, Haden would have known that COVID was "in the section." (*Id.* at 14.) When Plaintiff asked Haden why threw the clothing on the floor and did not "sanitize the section, tables, showers and Plaintiff's cell," Haden "said he wouldn't & didn't care." (*Id.*)

On September 29, 2021, a nurse told Plaintiff that his cellmate tested positive. (*Id.* at 16.) The nurse stated the cellmate was not removed from Plaintiff's cell because "they don't have the room can't handle COVID the jail is not equipt." (*Id.*) Plaintiff's "test came back negative." (*Id.*)

On September 30, a nurse told Plaintiff that COVID-positive inmates get moved into cells with COVID-negative inmates "all the time" because "medical department & deputies don't communicate" and "have no room are at max capacity not equipt to handle it." (*Id.* at 16-17.)

On September 24, 2021,[12] an inmate with COVID symptoms was put in Plaintiff's cell by defendants who knew the inmate had COVID symptoms and that placing the inmate with Plaintiff violated quarantine protocol. (*Id.* at 12.) Plaintiff was told by a deputy sheriff and a nurse that they needed "to put another person in [his] cell for they are at max capacity." (*Id.*) These defendants "deliberately intentionally knowingly exposed [Plaintiff] to COVID." (*Id.*)

From "Sept 21st to Oct 5th," "[s]till have not sanitized the section, nor cleaned the showers[.] Deputies & staff still don't wear gloves or masks even when passing out food." (*Id.* at 19.) "This all amounts to deliberate indifference[. T]hey knew of a risk they admitted it to me personally[. T]hey knowingly & intentionally refused to alleviate said risk." (*Id.*)

c. **"[U]nknown named Cache County Jail clinical service director,"** who was "in charge of medical at Cache County Jail and who had direct contact with [Plaintiff]," told Plaintiff that the defendants who transported Plaintiff with the total of eleven inmates knew the inmate with COVID had COVID before they transported the eleven inmates. (*Id.* at 2, 5, 10-11.) She responded to Plaintiff's complaints that staff members "don't sanitize the section, don't wear

---

[12] The AC asserts this date to be "Friday, Oct 24 2021," but October 24, 2021 was a Sunday, whereas September 24, 2021 was a Friday. Also, the context of when Plaintiff arrived at CCJ (September 21, 2021) to when he left CCJ (October 14, 2021), (ECF Nos. 7, at 4, 7; 49, at 6), further leads the Court to conclude that Plaintiff erred in writing October 24, 2021, instead of the correct date of September 24, 2021. This difference in dates ultimately appears to be of no consequence to the result here.

masks or gloves" nor clean and sanitize the showers, saying "deputies & staff" have been "told . . . many times yet they don't do it." (*Id.* at 17.) She also said they "house people with COVID with people . . . who don't" because "they are at max capacity no room in medical." (*Id.* at 18.)

### 3. Analysis

#### i. Objective prong--substantial risk of serious harm

It may be assumed, for this Order only, that the "objective prong is easily satisfied in the context of the pandemic because the COVID-19 virus creates a substantial risk of serious harm leading to pneumonia, respiratory failure, or death." *Robinson*, 2023 U.S. App. LEXIS 11384, at *18 (cleaned up). Such dire consequences may be magnified by "[t]he transmissibility of the COVID-19 virus in conjunction with [prison] dormitory-style housing." *Id.*

#### ii. Subjective prong--deliberate indifference

Meanwhile, the subjective prong generally calls for allegations that defendants "acted or failed to act despite . . . knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Moreover, "deliberate indifference describes a state of mind more blameworthy than negligence." *Id.* at 835. "It is obduracy and wantonness, not inadvertence or error in good faith . . . ." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). "[T]he prison employee must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Put another way, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause of commendation, cannot under [Supreme Court] cases be condemned as the infliction of punishment." *Id.* at 838. For instance, it could be that prison officials "did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger, or that they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave

rise was insubstantial or nonexistent." *Id.* at 844. Plaintiff must allege the defendants'

"awareness." *Id.* at 848.

Against this backdrop, it is clear that Plaintiff "has failed to adequately plead that

individual officials were deliberately indifferent to" the serious risk presented by COVID-19.

*Eaves*, 2024 U.S. App. LEXIS 12964, at *3. Like in *Eaves*, "the bulk of [Plaintiff's] complaint

alleges actions taken by groups of defendants without specifying each defendant's personal role

in the alleged constitutional deprivation." *Id.* at 3-4. And, "[i]ndividual liability under § 1983

must be based on personal involvement in the alleged constitutional violation." *Id.* at 4 (cleaned

up). "Even when [Plaintiff] mentions specific defendants, he fails to allege why their actions

were unreasonable given the circumstances--let alone whether they had any authority to correct

the alleged constitutional deprivation in the first place." *Id.*

Here, though thoroughly alerted to his pleading duties, (ECF No. 46), Plaintiff does not

name, specify, or enumerate a single defendant, whether they were transporters or sheriff's

deputies and nurses carrying out their daily duties as jail staff members; thus, each defendant's

role in the alleged constitutional violation is not particularized. Nor has Plaintiff alleged factual

information about any of the subgroups within the broader pool of defendants that meets the

criteria for stating a claim regarding this cause of action.

**Transporting defendants**. The only material allegation Plaintiff makes about the

transporting defendants' knowledge is that they--collectively--knew one of Plaintiff's fellow

transported inmates had COVID symptoms, though Plaintiff does not even describe what the

COVID symptoms were.[13] (*Id.*) There is no allegation (as this cause of action requires) about

---

[13] Plaintiff also alleges here and elsewhere that Defendants violated jail and CDC policy. But Plaintiff does not appear to recognize that any of Defendants' alleged failures to follow policy does not by itself equal a federal constitutional violation. *See, e.g., Williams v. Miller*, 696 F. App'x 862, 870 (10th Cir. 2017) ("Merely showing that [defendants] may have violated prison policy is not enough [to show a constitutional violation]." (citations

each separate transporter (identified in some way that would allow service of process) drawing a distinct inference that the COVID symptoms of the one inmate posed a risk of serious harm to Plaintiff individually and yet transporting the symptomatic inmate anyway. *See Eaves*, 2024 U.S. App. LEXIS 12964, at 3-4. And there is no allegation that each separate transporter had the authority to decline to transport the symptomatic inmate or transport the symptomatic inmate separately, yet chose not to do so. *See id.* at 4.

**CCJ deputies and nurses**. Likewise, as to the anonymous lump of CCJ defendants[14] who are alleged to have known that various CCJ inmates had COVID symptoms or positive tests, yet let them be around COVID-free Plaintiff, to share a cell, meals, recreation time, laundered clothing, and showers, without gloves and masks and sanitation of common surfaces, there is again no allegation of anything but simple knowledge that there were COVID symptoms or positive tests and a vague report that the defendants "did not care," or the jail was at "max capacity" and not equipped to handle COVID under the circumstances, or the "medical department & deputies don't communicate." (ECF No. 49, at 11, 13-17.) This is not the kind of specific detail that is needed to state a claim upon which relief may be granted, nor allow individual defendants to be served with the AC, (ECF No. 49).

---

omitted)); *Porro v. Barnes*, 624 F.3d 1322, 1329 (10th Cir. 2010) (stating plaintiff never sought "to explain how or why the violation of the . . . [prison] *policy* . . . necessarily demonstrates" his constitutional rights were breached and "[i]t is his burden to establish that the Constitution, not just a policy, is implicated" (emphasis in original)); *Hostetler v. Green*, 323 F. App'x 653, 657-58 (10th Cir. 2009) (unpublished) (noting defendant's mere violation of prison regulation does not equate to constitutional violation); *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993) ("[A] failure to adhere to administrative regulations does not equate to a constitutional violation."). The Court thus does not further address allegations of policy violations, but instead only considers professed constitutional breaches.

[14] The one person Plaintiff refers to by name is Deputy Haden, who allegedly took Plaintiff's clothing to be washed with the clothing of COVID-positive individuals, then threw Plaintiff's clean clothing on the floor of the section that was contaminated by COVID-positive individuals. Though Plaintiff does not specifically name Haden as a defendant, either in the Amended Complaint's caption or text, the Court includes the allegations about the clothing in this section. (ECF No. 49, at 14.)

Plaintiff does occasionally throw in conclusory words like "deliberately intentionally knowingly exposed [Plaintiff] to COVID," describing "deputies & staff" failing to "wear gloves or masks even when passing out food" as "knowingly & intentionally refused to alleviate . . . risk." (ECF No. 49, at 12, 19.) These conclusions are not, however, supported by necessary subsidiary facts. *See Iqbal*, 556 U.S. at 678.

**CCJ clinical service director**. This defendant is alleged only to have told Plaintiff the following: (1) transporting defendants knew that the COVID-infected inmate being transported with Plaintiff and other inmates had COVID before they transported the group; (2) staff members had been told to sanitize and wear masks and gloves but did not comply; and (3) COVID-infected inmates were housed with COVID-free inmates because facilities were full. (ECF No. 49, at 2, 5, 10-11, 17-18.) Two allegations necessary to state a claim are missing here: (a) the affirmative link of the director's personal involvement--i.e., the director is said only to have told Plaintiff what other unnamed defendants had done or known, not what the director did; and (b) any facts from which the director's state of mind--i.e., subjective knowledge--could be gleaned regarding the asserted constitutional offenses.

**Analysis applicable to all three groups of defendants**. "Without plausible allegations about what the defendants knew or should have known, [the court] cannot infer that any prison official possessed the necessary mental culpability to support a deliberate-indifference claim." *Shipps v. Groves*, No. 22-3200, 2023 U.S. App. LEXIS 10781, at *2, 6-7 (10th Cir. May 3, 2023) (unpublished) (affirming district court's dismissal for failure to state claim Plaintiff's deliberate indifference claims against jail officials for "failure to enforce COVID-19 protective procedures"); *Blake v. Zmuda*, No. 21-3236, 2022 U.S. App. LEXIS 10772, at *4 (10th Cir. Apr. 21, 2022) (unpublished) (affirming dismissal for failure to state claim when plaintiff did "not

alleged sufficient facts tending to show that Defendants knew the segregation cell was not sanitized, a substantial risk of serious harm existed by placing him in that unsanitized cell, and Defendants deliberately disregarded that risk"); *Livingston v. Unified Gov't of Wyandotte Cnty.*, No. 23-3032, 2023 U.S. Dist. LEXIS 155804, at *7 (D. Kan. Sept. 1, 2023) (dismissing for failure to state claim when plaintiff alleged "inadequate ventilation" led to COVID infection but plaintiff failed to allege "any fact that, if true, would show that poor ventilation for three weeks presented a substantial risk of serious harm to him, that Defendants drew the inference that a such of serious harm to Plaintiff existed, and that they then disregarded that risk" and noting "Plaintiff's claims related to the conditions of his confinement suggest, at most, negligence, which is not actionable under § 1983").

     *Brown v. Washington*, No. 21-1729, 2024 U.S. App. LEXIS 2775 (6th Cir. Feb. 6, 2024) (unpublished), has similarities to this action (except that Brown actually tested positive for COVID, unlike Plaintiff). The plaintiff in *Brown*

> tested positive for COVID-19 in January 2021. He claimed that the prison "administration" housed prisoners who had tested positive in close contact with those who had tested negative. . . . He further alleged that he "witnessed nurses not changing their gloves while testing" prisoners, that his requests that the commissary stock "certified" masks was denied, and that nurses told him and other prisoners that they were going to get COVID-19 "anyway" and that they "needed to obtain [herd] immunity." Brown claimed that he contracted the virus because he "was purposely exposed to" it: he was assigned the job of separating the laundry of prisoners who had tested positive for COVID-19 because he had yet to contract it, and he was housed with prisoners who had tested positive despite his request to be isolated from them. He alleged that he continues to suffer from headaches, breathing problems, and anxiety. He sought . . . punitive damages . . . .

*Id.* at *2.

     On appeal, the Sixth Circuit affirmed the district court's dismissal for failure to state a claim upon which relief may be granted. *Id.* at *4, 7. The Sixth Circuit agreed with the district

court that the plaintiff had not tied "the allegations of misconduct in his . . . complaint to any of the named defendants." *Id.* at *5. Similar to the case here, the plaintiff in *Brown* "discussed actions by 'nurses' and 'the administration,' and he alleged wrongdoing--refusing to buy certified masks and housing him with prisoners who had tested positive--without identifying the specific parties." *Id.* Also like here, Brown did not plead "facts that demonstrate what each defendant did to violate the asserted constitutional right." *Id.* (cleaned up). Indeed, Plaintiff here, as Brown, offered "no facts to support a reasonable inference that any of the defendants individually took such an action, much less that he or she did so in deliberate indifference to his health or safety in violation of the Eighth Amendment." *Id.* at *6-7 (cleaned up).

In another Sixth Circuit decision upholding a district court's dismissal for failure to state a claim upon which relief may be granted (based on allegations not amounting to a claim of deliberate indifference) the inmate-plaintiff testing negative for COVID was not transferred to housing (the gym) for inmates with negative test results as promised, then later tested positive. *Onumonu v. Washington*, No. 21-2812, 2022 U.S. App. LEXIS 17230, at *2 (6th Cir. June 22, 2022) (unpublished). The failure to transfer the plaintiff to non-COVID housing happened despite the plaintiff's "repeated inquiries about the transfer"; still, "a prison official informed him that no order was made to transfer him to the gymnasium." *Id.* at *7-8. Such allegations were deemed not to have identified "the specific actions taken by the defendants that could plausibly support the subjective component of an Eighth Amendment claim." *Id.* at *8. The very same could be said of Plaintiff's allegations in this case. Thus, the same conclusion is drawn.

Also, in *Brown v. Somerset SCI*, No. 22-2659, 2023 U.S. App. LEXIS 10636 (3d Cir. May 2, 2023) (per curiam) (unpublished), the plaintiff asserted that, without consideration for the plaintiff's preference to be housed alone because of "his fears of contracting COVID-19," an

"officer was 'vindictive' in placing him with a cellmate, and that he experienced symptoms of the virus." *Id.* at *2-3. However, as here, the plaintiff "did not provide further information about his risk of becoming seriously ill or the correctional officer's knowledge of any excessive risk to him." *Id.* Under those circumstances, the Third Circuit upheld the district court's conclusion that the plaintiff's complaint failed to state a claim upon which relief may be granted, stating, "His general assertions do not support a claim that his constitutional rights were violated." *Id.*

Finally--and most importantly-- in *Blake v. Zmuda*, the Tenth Circuit mirrored these other circuit courts of appeals' decisions. No. 21-3236, 2022 U.S. App. LEXIS 10772 (10th Cir. Apr. 21, 2022) (unpublished). Under the Eighth Amendment, inmate-plaintiff "Blake asserted that prison staff violated the mask-wearing policy" and that "after having tested negative for COVID-19, he was placed in a quarantine cell that was improperly sanitized after an inmate with COVID-19 had occupied the cell . . . [and] he tested positive for COVID-19 soon after." *Id.* at *1. The district court dismissed the complaint for failure to state a claim, concluding "that Mr. Blake's allegations suggest, at most, negligence and do not rise to the level of deliberate indifference." *Id.* at *2 (cleaned up). Affirming the district court, the Tenth Circuit wrote,

> Mr. Blake has not alleged sufficient facts tending to show that Defendants knew the segregation cell was not sanitized, a substantial risk of serious harm existed by placing him in that unsanitized cell, and Defendants deliberately disregarded that risk. Although Mr. Blake has alleged that he filed various grievances regarding prison staff violations of COVID-19 policies, even an official's failure to act on a risk he should have perceived is not enough to establish deliberate indifference. At most, Mr. Blake's allegations amount to a claim of negligence.

*Id.* at *4. Similarly, Plaintiff has not alleged facts tending to show that his unspecified defendants acted with anything more than negligence toward the ultimately unfulfilled possibility that Plaintiff would become infected with COVID.

**Conclusion**. The AC's sparse factual allegations fail to support a plausible claim that (punitive) damages are warranted here. Plaintiff identifies no specific defendants and states his injury in stark, conclusory fashion, simply as "mental/emotional anguish," without alleging particular facts regarding how that anguish has looked or tangibly injured him. (ECF No. 49, at 7.) After all, he never alleges that he ever tested positive for COVID; he merely worried that he would test positive at some point. (ECF No. 49.) But a *pro se* party's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Plaintiff has not offered a single plausible point of support for a claim of punitive damages because he alleges no facts whatsoever showing that a particular identifiable defendant acted with a sufficiently culpable state of mind--i.e., conduct "'motivated by evil motive or intent, or . . . involved reckless or callous indifference to the federally protected rights of others.'" *Searles*, 251 F.3d at 879 (quoting *Smith*, 461 U.S. at 56). In fact, Plaintiff's facts suggest, at most, negligence.[15] By failing to affirmatively link any individual defendant to the elements of an Eighth Amendment violation, Plaintiff fails to state a claim that CCJ's conditions rose to the level of a constitutional violation. Plaintiff's request for punitive damages is thus dismissed.

## C. LOST OR DESTROYED PERSONAL PROPERTY

Plaintiff contends he suffered "loss/destroyed personal property" that was taken "by Cache County Deputies Sept. 21st 2021." (ECF No. 49, at 5-6.) Plaintiff also asserts that when

---

[15] Plaintiff was apprised by the Cure Order

> that negligence is not a federal claim. *See Estelle*, 429 U.S. at 106 (holding "inadvertent failure to provide adequate medical care" or "medical malpractice does not become a constitutional violation merely because the victim is a prisoner," but instead claim may be alleged properly only by alleging "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs").

(ECF No. 46, at 3.)

he "was transported by U.S. Marshals from Cache County to Salt Lake Oct 14, 2024 they took my personal items & threw them away as well." (*Id.* at 6.) These lean allegations are the totality of "Count II." (*Id.* at 6, 20.)

First, Plaintiff does not identify a cause of action; he merely labels Count II, "loss/destroyed personal property," which is not a federal constitutional cause of action. (ECF No. 49, at 6.) And even if Plaintiff had identified a proper cause of action, second, he does not provide enough detail upon which any of these unnamed defendants may be served. *See Hill*, 14 F. Supp. 2d at 1238. Third, Plaintiff does not affirmatively link each individual defendant (whomever they may be) to any particular piece of personal property that was lost or destroyed. And finally, as Plaintiff was advised in the Cure Order, an allegation of a

> "random and unauthorized deprivation of property under color of state law . . . does not give rise to a § 1983 claim if there is an adequate state post-deprivation remedy. *See Frazier v Flores*, No. 13-1535, 2014 U.S. App. LEXIS 12936, at *4 (10th Cir. July 9, 2014) (unpublished) (citing *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)).

(ECF No. 46, at 2.) Yet Plaintiff has not alleged as he must--to state a cause of action here--that state defendants' action (of depriving him of his property) was completed by also "refus[ing] to provide a suitable postdeprivation remedy," *Hudson*, 468 U.S. at 533--for instance, a state tort action, *Parratt v. Taylor*, 451 U.S. 527, 543 (1981).[16]

For failure to state a claim, then, this cause of action is dismissed.

---

[16] Plaintiff does state that he "filed a notice of claim w/county for personal property loss[;] ha[d] spoken to U.S. Marshals as well[;] & ha[d] filed grievances." (ECF No. 49, at 8.) However, he does not allege facts as to how these were received--i.e., were these potentially postdeprivation remedies refused? His failure to include such an allegation dooms this cause of action.

## D. PHONE SYSTEM

The AC's "Count III" is simply entitled, "Phone system," which is not a cause of action. (ECF No. 49, at 6.) Again, Plaintiff impermissibly leaves it up to the Court to tease out of his words a cause of action and any allegations that may match up to each element of a Court-constructed cause of action. *See Iqbal*, 556 U.S. at 678 ("Rule 8 . . . demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and "asks for more than a sheer possibility that a defendant has acted unlawfully"). Plaintiff alleges that CCJ "uses a phone system that [Plaintiff was required to] use to make calls and charges not only exceeding rates per call within federal laws but also don't reimburse calls." (ECF No. 49, at 7.) As an aside, Plaintiff does not name Cache County as a defendant, so the Court presumes Plaintiff could only be trying to tie any of these allegations to "unknown named deputy sheriff . . . who works at the jail." (*Id.* at 5.)

Plaintiff states the following about his use of the phone system:

> I have explained to Cache County Jail deputies at least 3 times of how before I can say hello to the person I am calling the phone system hangs up & a recording says 3rd party calls not allowed (9/22/2021 9/26/2021) The deputies admitted to me they reviewed my calls and are not 3rd party calls.
> 9/27/2021 They also told me they couldn't do anything about it that I had to have my mother call Securus to get my money back. I told him my mother has tried and can't get a live person and it shouldn't be up to my family it should be up to the jail because it's their phone system and that they get a kickback from the company. The staff member admitted to me in writing that they have had many problems with that company & I said why don't they fix it for not only are they overcharging for fees that are in excess of what federal standard of rate for calls regulations allow but fees on top of fees.
> So I pay a processing fee just to make a call then another fee just to accept my call then another fee to talk so like 3 separate fees plus not to mention another fee to put money on the phone system. It's a racket. The staff members response to me was its not their problem. I am at their mercy & being charged fees that are

> too excessive and I have no choice but to use their system. The
> fees are not within the federal guidelines. . . . Being held to fees I
> know for a fact is against federal regulations but I just don't know
> the law code statute caselaw on it.

(ECF No. 49, at 21-23.)

Plaintiff also states CCJ Defendants and Defendant Securus

> charge exorbitant rates 21¢ a minute a charge also exists for ring
> time on calls never completed being assessed "operator-assisted["]
> rates on calls that offered no operator and incurring additional
> surcharges for callbacks after encountering poor reception and cut
> of[f] calls. . . . Plus Cache County Jail by way of Securus illegally
> recorded my calls between me and my federal public defender.

(ECF No. 50, at 2-3.) Finally, he asserts "Securus charges fees in excess to put money on the

phone just so I can make calls . . . & I paid like $10 per call. . . . Securus is in violation of the

Sherman Antitrust Act." (*Id.* at 2.)

Many of Plaintiff's allegations are simply that CCJ's phone system malfunctioned and

that unknown deputies became aware of the malfunctioning but did not fix it; Plaintiff does not

identify in any way how that malfunctioning--and failure by unknown deputies (with unknown

abilities and authorizations) to fix the malfunctioning--may possibly constitute a federal cause of

action. (ECF No. 49.) Another allegation reflects Plaintiff's opinion (unencumbered by reference

to federal law) that he and his mother should not have to seek refunds or reimbursements for fees

charged to them during malfunctions. (*Id.*) Three of Plaintiff's broad allegations, though, may be

construed as suggesting causes of action, though all three lack the support of underlying

allegations necessary to state claims upon which relief may be granted. (*Id.*)

### 1. Violations of Federal Regulations

Regarding federal regulatory violations, Plaintiff baldly asserts,

> Not only are they overcharging for fees that are in excess of what
> federal standard of rate for calls regulations allow but fees on top

> of fees[;] the fees are not within the federal guidelines. . . . Being
> held to fees I know for a fact is against federal regulations but I
> just don't know the law code statute caselaw on it.

(ECF No. 49, at [21-23].) The only relevant specific amount he specifies as "exorbitant" is "21¢

a minute." (ECF No. 50, at [2].) The other specific amount he provides is "$10 per call," but,

without knowing how long those calls were, it is impossible to assess and compare exorbitance.

(*Id.*) For instance, a $10 call at "21¢ a minute" lasts about 47 minutes, while a $10 call at 10¢ a

minute lasts 100 minutes. Plaintiff provides no details about how long a phone call may be.

For its analysis, the Court thus relies on the "21¢ a minute" allegation, together with the

article that Plaintiff attached to the AC supporting his argument of fees "in excess of what

federal standard of rate for calls regulations allow." (ECF Nos. 49, at 2; 50, at 2.) Plaintiff's

article states, "In 2021 the Federal Communications Commission slashed the interstate calling

rates for prisons or jails, capping the rates at $.12 per minute for prisons and $.14 per minute for

jails with a daily population of 1,000 or more; smaller jails can still charge up to $.21 per

minute." Alan Prendergast, *Mission Creep: Prison Telecoms Scramble to Extend Their Reach*, 33

Prison Legal News, vol. 33, no. 7, at 1 (July 2022); *see also Incarcerated People's*

*Communications Services (formerly Inmate Calling Services)*, https://fcc.gov (last visited Sept.

18, 2025) (showing table showing "small and "medium" jails--populations between 100-999--

were allowed in 2021 to charge up to $0.21 per minute for audio communications). Meanwhile,

an article in Cache County's local newspaper stated that, "on Jan. 31, the Cache County Jail was

housing 284 inmates." Corbin Allen, *A Snapshot of Cache County's 2024 Crime, Relative to*

*Recent Years*, Herald Journal News, Feb. 13, 2025. So, based on the information Plaintiff

supplies with his AC, together with an approximation of CCJ's population size found through the

Court's research, around the time Plaintiff was held at CCJ, "21¢ a minute" was an acceptable phone charge at a correctional facility of its size.

On the facts averred by Plaintiff, the Court rejects his allegations that CCJ was charging phone fees in excess of federal regulations. This means that Plaintiff's attempt at stating a cause of action here fails.

### 2. Illegal Recording of Phone Calls

Plaintiff's complete claim and supporting allegation here is a mere single sentence: "Cache County Jail by way of Securus illegally recorded my calls between me and my federal public defender." (ECF No. 50, at 3.) This is the quintessential "unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Plaintiff's terse claim is thus entirely inadequate to state a claim upon which relief may be granted and is not treated further. *Id.* (holding complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement" (cleaned up)).

### 3. Sherman Antitrust Act Violation

Plaintiff's entire claim and "sustaining" allegation is but nine words: "Securus is in violation of the Sherman Antitrust Act." (ECF No. 50, at 2.) These words are what *Iqbal* was referring to it when it said, "A pleading that offers 'labels and conclusions' . . . will not do.'" 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). This claim lacks "facial plausibility" because Plaintiff did not include in the AC "sufficient factual matter" that would "allow [this C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This threadbare claim is therefore rejected and disregarded going forward.

### 4. Conclusion

As required by the principles in the above standard-of-review section, Plaintiff does not set forth the elements of causes of action and affirmatively link them to specific named defendants. Accordingly, these potential causes of action are dismissed.

### E. COMMISSARY PRICE GOUGING

Plaintiff alleges that CCJ "has a mark up of over 100% of the value of the products they sell [Plaintiff] for commissary. . . . Example for a 14 item they charge me 254 for it." (ECF No. 49, at 24.) He says, "I don't know who the staff member is who is in charge so they are John/Jane Doe." (*Id.*) And, "don't know if it's called fleecing or extortion I just know there is an issue with marking up a product in excess over a certain percentage is ridiculous." (*Id.*) Again, the time period at issue is September 21 to October 14, 2021, which is the time during which Plaintiff was held in CCJ. (*Id.* at 5-6.)

Plaintiff does not specifically identify constitutional rights allegedly violated. "[T]o state a claim . . ., a complaint must explain what each defendant did to [the pro se plaintiff]; when the defendant did it; how the defendant's action harmed (the plaintiff); and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007). The Court liberally construes a *pro se* complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But the Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

Here, Plaintiff has not provided (1) a named defendant--nor any details that would allow service upon any person as to these allegations; (2) a hint of a cause of action under which to hold the unnamed defendant liable; and (3) any supporting allegations that would link the

unnamed defendant to each element of a valid cause of action. Thus, the allegations here "do not

permit the court to infer more than the mere possibility of misconduct," which does not show as

required "'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P.

8(a)(2)). These allegations are thus dismissed for failing to state a claim upon which relief may

be granted.

## II. ORDER

Based on the Court's screening of the Amended Complaint--for failure to state a claim

upon which relief may be granted--**IT IS ORDERED** that Plaintiff's Amended Complaint, (ECF

Nos. 49-50), is **DISMISSED** with prejudice. *See* 28 U.S.C.S. § 1915(e)(2)(B) (2025). Two

iterations of the complaint, (ECF Nos. 7, 49-50), and a full round of comprehensive guidance on

curing deficiencies, (ECF No. 46), have not resulted in an adequate pleading. It is apparent to the

Court that further opportunity to amend would not lead to a different result.

DATED this 23rd day of September, 2025.

BY THE COURT:


JUDGE TED STEWART
United States District Court